## DEFAULTED PREMIUMS ON LIFE INSURANCE.

[Circuit Court of Lucas County.]

METROPOLITAN LIFE INSURANCE CO. v. FLORENCE A. WALTON,
ADMINISTRATRIX.

Decided, March 10, 1904.

*Life Insurance—Incontestability of Policy after Two Years—Except
for Fraud or Misstatement of Age—Relates only to What Occurred
at the Inception of the Contract—Waiver of Default in Payment
of Premiums.*

1. The provision endorsed upon a policy of life insurance that "this
policy shall be incontestable after two years, except for fraud or
misstatement of age," is similar to the provision in Section 3626,
Revised Statutes, and relates entirely to what occurred at the
time the policy was issued or the application made, and has no
reference to default in the payment of premiums.
2. Where the policy contains the provision that "should this policy
become void in consequence of non-payment of premiums, it may
be revived if not more than fifty-two premiums are due, upon the
payment of all arrears, and the presentation of evidence satis-
factory to the company of the sound health of the insured," the
company may rightfully refuse to accept four weeks premiums on
a policy forty-six days in arrears, an investigation having shown
that the insured was far gone with consumption, his death hav-
ing occurred seventeen days thereafter.

HULL, J.; PARKER, J., and HAYNES, J., concur.

This action was brought in the court of common pleas by the
defendant in error, who was the plaintiff below, upon a policy
of life insurance issued by the insurance company, upon her
husband's life, for the sum of $500. The dues upon this policy
were sixty-two cents every Monday. Payment was refused by
the insurance company upon the ground that the premiums
were in default at the time of the death of Mr. Walton. Suit
was brought to collect the amount of the policy. The case was
tried to the court and jury and a verdict returned for the amount
of the policy, with interest, and judgment was entered thereon.

It is sought by this proceeding in error to reverse that judg-
ment.

134   CIRCUIT COURT REPORTS—NEW SERIES.

Metropolitan Life Ins. Co. v. Walton, Adm'x. [Vol. IV, N. S.

It is conceded that at the time of the death of Walton the policy was in default for the payment of dues or premiums; but is claimed that the company had waived the payment of the premiums upon the exact day that they were due. The policy contained a provision, in substance, that if the premiums were not paid when due, that the policy should be void, and following that, this was also in the policy:

"And it is agreed that the foregoing provision which avoids the policy in case any premium shall be overdue, shall be considered in no respect waived by any act of grace by the company in acceptance of overdue premiums upon this or any other policy."

There is a further provision on the face of the policy that agents are forbidden from receiving premiums more than four weeks after they are due. This provision is to be considered with another provision of the policy which is endorsed on the policy, to which I will refer later.

On the back of the policy under the head of "Privileges and Concessions to Policy Holders," among other things are these provisions:

"*Incontestability*—This policy shall be incontestable after two years, except for fraud or misstatement of age."

"*Grace period.*—Should the death of the insured occur while any premiums are in arrears not exceeding four weeks, the company will, nevertheless, pay the policy, subject to its conditions."

"*Revival*—Should this policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon the payment of all arrears, and the presentation of evidence, satisfactory to the company, of the sound health of the insured."

The policy was taken out in June, 1899. Walton died June 9, 1902—about three years after the policy was issued. During that time the insurance was paid a portion of the time by Walton's wife, and a portion of the time by him. For about a year at the last, whatever premiums were paid were paid by Mrs. Walton. They were in arrears for premiums several times. Sometimes premiums were due more than four weeks, which was called the grace period; they ran over this time a few days occasionally,

and the money was accepted and the policy revived, not more than fifty-two weeks having gone by. On May 23, 1902, the premiums were in arrears forty-six days, six Mondays having gone by, and some days over, and Mrs. Walton tendered to the agent the premium for four weeks; this left three weeks still unpaid, but within the grace period, as it is called; these premiums were refused by the agent; and on the ninth of June following, Mr. Walton died. The question submitted to the jury was whether there had been such acts on the part of the company as would lead a reasonably prudent person to believe that the company had waived the requirement that premiums should be paid on the Monday of each week. And a verdict was returned in favor of the plaintiff.

It is claimed that the judgment is wrong. It appears from the evidence that in April before Mr. Walton's death, Mrs. Walton went to the office of the company and told the young man in charge that she could not afford to pay these premiums any longer; that they could see Mr. Walton and ascertain whether he would pay them (the insurance was on his life for her benefit); they were not living together, but had been separated for about a year. He was keeping a saloon or tending bar in another part of the city. The next month, May 23, she had not paid anything more, and being in arrears at the time the talk occurred at the office in April, she tendered to the company four weeks' premiums. Before accepting these premiums the agent undertook to ascertain the health of Mr. Walton; he went to the saloon where he was employed, and there found him in a bad state of health, suffering from consumption or some pulmonary disease, breathing very hard, so hard that he could be heard across the room. He reported that fact and the company refused to accept the premiums the day after Mrs. Walton had made the tender on May 23. Two or three days after that Mr. Walton was taken to the hospital and on June 9, seventeen days after the tender was made, he died. The question is, whether under these circumstances the company is liable upon this policy.

It is said that this policy, having run more than two years, there were only two grounds upon which it could be contested,

136    CIRCUIT COURT · REPORTS—NEW SERIES.

Metropolitan Life Ins. Co. v. Walton, Adm'x. [Vol. IV, N. S.

according to this provision endorsed upon it and which I have read:

"This policy shall be incontestable after two years, except for fraud or misstatement of age."

In our judgment that provision relates entirely to what may have occurred at the time of the issue of the policy or the application, at the very inception of the contract, and does not relate to non-payment of premiums; and does not mean that no matter if at the time of death the insured is in default for payment of premiums in any amount or for any length of time, the policy shall be paid. It is similar to the provision contained in Section 3626, Revised Statutes, of this state, which provides:

"All companies, after having received three annual premiums on any policy issued on the life of any person in this state, are estopped from defending, upon any other ground than fraud, against any claim arising upon such policy by reason of any errors, omissions or misstatements of the assured in any application made by such assured on which the policy was issued, except as to age."

We do not think that this provision of the policy refers to or was intended to refer to the matter of payment of premiums that were overdue "after two years." If this were true, one might fail and refuse to pay after that period for a year or two years, or for an indefinite time, and his policy could not be contested or payment refused upon that ground. This would be unreasonable. The payment of dues lies at the very foundation of life insurance. Without their being paid with reasonable promptness, no insurance company can do business.

But it is said that the company waived the payment of these dues upon the Monday of each week, and there is evidence tending to show this, as premiums were received on several occasions, not only after they became due, but after the grace period of four weeks had gone by.

There is, however, a provision which I have read on the back of this policy that in case the policy is revived it must be upon the payment of arrears and the presentation of evidence satisfactory to the company of the sound health of the insured. The

policy upon its face provides, "if any premium shall not be paid when due, this policy shall become void;" but on its back is the provision that if the insured dies within four weeks after he is in default for dues, the policy shall be regarded as in full force; and the further·provision:

"Should this policy become void in consequence of non-payment of premiums, it may be revived, if not more than fifty-two premiums are due."

That clause, a part of which I have just read, contains the condition referred to:

"Upon the payment of arrears and the presentation of evidence satisfactory to the company of sound health of the insured."

There is no evidence in this record that the company or any of its agents at any time waived the provision that if the policy was revived, the company must have satisfactory evidence of the sound health of the insured. Mrs. Walton says herself that they always asked her what his health was; how he was, or whether he was well, and so on, when she paid up the back dues and thus revived the policy. So it can not be said that the company, by any of its acts, or the acts of any of its agents, had ever waived this provision of the policy. That was part of the contract and one of the conditions upon which the policy could be revived, that such evidence be presented to the company. This seems to us to be a very reasonable provision that when one is in default for non-payment of premium for a period not exceeding fifty-two weeks, his policy, which has become void, can not be revived, unless he is in reasonably good health, and this is shown by satisfactory evidence to the company.

Now what were the circumstances at the time this tender was made? I have already stated them briefly. Before the money was received the agent undertook to satisfy himself as to the health of Mr. Walton. Mrs. Walton had theretofore notified the company that she could no longer pay these premiums; and apparently on learning (that would be the inference) that Mr. Walton was in very poor health, she made this tender to the

company.   The agent visited Mr. Walton and ascertained that he was in very poor health, and within seventeen days after that he died.   This provision not having been waived by the company upon any occasion, we are of the opinion that the company was not bound to receive the dues under these circumstances, with Mr. Walton in the condition of health that he was.   Any person insured in this company, who allowed his dues to go by the day of payment, took his chances of getting into such condition of health that the company would not permit him to revive his policy, there being no evidence that the company had ever waived this provision as to the health of the insured. We are of the opinion that this verdict is not sustained by the evidence; but that the uncontradicted evidence shows that the policy had become void at the time the tender was made, and the undisputed evidence is that Mr. Walton was in such condition of health at the time that the company was under no obligations to accept the premiums or revive the policy.

In view of this, a judgment should be entered here in favor of the company; we see no reason for sending the case back for a retrial, the undisputed evidence showing that this provision as to health had never been waived, and showing further that Mr. Walton at the time the dues were tendered was practically in a dying condition, and did die within a very short time thereafter.   In our opinion the company is entitled to a judgment upon this record and that will be the order of the court.

The judgment of the court of common pleas will be reversed and judgment entered in favor of the plaintiff in error.

*George B. Boone,* for plaintiff in error.

*O. S. Brumback* and *A. T. Goorley,* for defendant in error.